UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DENISE COLBERT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1219 (RMC) |
| | ) | |
| **ROBERT C. TAPELLA, Public Printer,** | ) | |
| **U.S. GOVERNMENT PRINTING** | ) | |
| **OFFICE,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Denise Colbert is an African-American female employed by the Customer Services section of the Government Printing Office ("GPO"). In late December 2005 two vacancy announcements for positions in that section were posted, and Ms. Colbert applied for each. On or about January 20, 2006, the positions were filled by white male applicants. Ms. Colbert then sued GPO, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* GPO now moves for summary judgment on Ms. Colbert's claims.

**I. FACTS**

On December 29, 2005, GPO posted two vacancy announcements for Supervisory Printing Services Specialists in the Customer Services Section of Congressional Publishing Services. Compl. ¶ 11. Ms. Colbert timely submitted applications for each position. *Id.* ¶ 12. Each vacancy announcement contained a section titled "How You Will Be Evaluated" that stated that the candidates would be evaluated based on their qualifications and their narrative responses to the knowledge, skills, abilities and other characteristics ("KSAOs") described in the announcements.

*See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") [Dkt. # 22], Exs. 7 & 8 (Supervisory Printing Services Specialist Vacancy Announcements). Jerry Hammond, Director of Congressional Publishing Services for the Customer Services Division, who was charged with selecting among the applicants, did not interview any of the candidates for the positions, but rather evaluated them based on the content of their applications and his personal knowledge of their work. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Dkt. # 20] at 9. Lyle Green, the Associate Director, assisted him in making the decisions. *Id.*

In January 2006, Mr. Hammond and Mr. Green selected Joseph Benjamin and William Milans, both white males, for the vacant positions. Compl. ¶ 14; Pl.'s Opp'n at 3. Mr. Benjamin was hired for the day-shift position, which had been advertised at grade PG-14, and Mr. Milans was hired for the night-shift position, which had been advertised at grade PG-13/14. *See* Pl.'s Opp'n, Exs. 7 & 8 (Supervisory Printing Services Specialist Vacancy Announcements). Prior to the posting of the vacancy announcements, Mr. Hammond requested that the night-shift position be advertised at the PG-13/14 level to encourage applications from more candidates who had previous night-shift experience. *See* Def.'s Mem., Ex. 9 ("Hammond Aff.") at 7; *see* Pl.'s Opp'n, Ex. 3 ("Hammond Dep.") at 31-32. Immediately prior to their selection, Mr. Benjamin and Mr. Milans had been employed in the Congressional Publishing Services section as PG-13 Printing Specialists. Pl.'s Opp'n at 3. Mr. Milans, however, had not been employed at grade PG-13 for sufficient time to qualify for the PG-14 day-shift position and was only qualified for the PG-13/14 night-shift position. *Id.* Ms. Colbert was employed at grade PG-13, as well, and was qualified for both positions. In fact, at either position Ms. Colbert was eligible for and would have received a promotion to grade PG-14. *See* Pl.'s Opp'n, Ex. 2 ("Colbert Decl.") ¶¶ 2 & 17.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the

absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### B. Title VII

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms, and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees. 42 U.S.C. § 2000e-16. To establish a prima facie case of discrimination, a plaintiff must show 1) that he is a member of a protected class; 2) that he suffered an adverse personnel action; 3) under circumstances giving rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

Once a plaintiff establishes a prima facie case, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets this burden, the plaintiff then must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804. However,

> where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — *and should not* — decide whether plaintiff actually made out a prima facie case under *McDonnell Douglas*.

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, the court should move directly to the third prong of the *McDonnell Douglas* framework and consider only whether the plaintiff has provided sufficient evidence for a reasonable jury to find that the defendant's stated reasons are a pretext for discrimination. *Id.*

### III. ANALYSIS

GPO offers, as its legitimate, non-discriminatory reasons for its selection of white male candidates over Ms. Colbert, that "Mr. Hammond simply did not believe Ms. Colbert was one of the two most-qualified candidates for the Supervisory Printing Specialist Positions." Def.'s Mem. at 7. GPO does not argue that Ms. Colbert was unqualified, but rather points out that

> when an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was 'significantly better qualified for the job' than those ultimately chosen. . . . The qualifications gap must be great enough to be inherently indicative of discrimination.

*Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (internal citations omitted).

Ms. Colbert argues that she had "far more supervisory experience" than Mr. Benjamin, because she had approximately ten years of supervisory experience within GPO, while Mr. Benjamin's only known supervisory experience was less than three years of experience at a different government agency two decades ago. Pl.'s Opp'n at 5. With respect to Mr. Milans, Ms. Colbert states that while their supervisory experience was comparable, his time as a grade PG-13

employee was significantly less. She argues that Mr. Hammond requested that the night-shift announcement be posted at a grade PG-13/14 level because he had pre-selected Mr. Milans for the position and Mr. Milans was not eligible to apply at the PG-14 level. Pl.'s Opp'n at 10.

Supervisory experience was only one of the five KSAOs listed in the vacancy announcements; the others were knowledge and understanding of the laws and regulations that govern the activities of GPO, knowledge of the legislative process, ability to communicate effectively orally with Congress members and their staff, and knowledge of terminology and mechanics of electronic data transmission as used by GPO and Congress. *See* Pl.'s Opp'n, Exs. 7 & 8. Mr. Hammond cited among the reasons for selection of Mr. Benjamin the latter's 38 years of printing experience, his knowledge of GPO printing procedures and policies, and his effective meetings with House and Senate staff. Hammond Aff. at 4. Conversely, Mr. Hammond noted that "to [his] knowledge," Ms. Colbert had never worked in procurement and did not know the laws and regulations related to that part of the position, nor did she have the technical expertise and knowledge of the congressional legislative process that Mr. Benjamin had. *Id.* at 4-5.

Similarly, Mr. Hammond cited Mr. Milans' 36 years of printing/publishing experience, 14 years of supervisory experience, and extensive technical expertise that was necessary to the duties of the night-shift position. Hammond Aff. at 6. Mr. Milans also had "one year nighttime experience" and had been acting as the night-shift Supervisory Printing Services Specialist for three months since the retirement of the individual who had previously held the position. *Id.* at 6-7. Mr. Hammond did not believe Ms. Colbert had ever worked a night shift, nor did she have the experience with electronic transmissions or with "the inner office procedures in transmitting or processing" that Mr. Milans had. *Id.* Furthermore, Mr. Hammond stated that he requested that the

night-shift position be advertised at a PG-13/14 grade level in order to open the position to more candidates who may have had relevant night-shift experience. *See* Hammond Aff. at 7. The request was made before the announcement was posted and before Mr. Milans had expressed any interest in the position. Hammond Dep. at 31-32.

Nothing Ms. Colbert offers in response is sufficient to show that she was "significantly better qualified" than Mr. Benjamin or Mr. Milans. Ms. Colbert states that the "day and night positions were essentially identical," Pl.'s Opp'n at 9, the implication being that the distinctions Mr. Hammond drew between the two were arbitrary. She also states that her application showed that she had "extensive experience and knowledge of the procurement process," that she "certainly understood the legislative process," and that the position did not in fact require the technical expertise Mr. Hammond believed she lacked. *Id.* at 6-7. However, a plaintiff's "subjective assessment" of her own qualifications relative to other candidates is not relevant. *Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000). Where a hiring decision "necessarily depends on 'assessing the significance of small differences in the qualifications' and making 'a judgment call,' . . . [the plaintiff's] pointing to differences in qualifications that merely indicate a 'close call' does not get [her] beyond summary judgment." *Stewart v. Ashcroft*, 352 F.3d 422, 430 (D.C. Cir. 2003).

Nor does Ms. Colbert's argument regarding the reclassification of the night-shift position to a grade PG-13/14 further her cause. "A reasonable jury ordinarily cannot find discrimination simply from the fact that an employer takes extra steps to find better-qualified employees." *Adeyemi*, 525 F.3d at 1229. In *Adeyemi*, the plaintiff argued that he was discriminated against on the basis of disability where he applied for a Level 11 position and, after interviewing

him, the hiring officials re-posted the Level 11 vacancies and ultimately expanded the hiring pool to include candidates who had applied for Level 12 vacancies. *Id.* at 1225-26. The Court found that there could be no inference of discrimination from the hiring officials' determination that the remaining Level 11 applicants were unsatisfactory and that the Level 12 candidates were more qualified. *Id.* at 1229. When an employer chooses from among similarly qualified candidates, it is the Court's duty not to second-guess those decisions in the absence of affirmative evidence of discrimination. *See id.* at 1227. "[T]he scope of review in employment discrimination cases is more narrow than [plaintiff] wishes because federal courts are not review boards for local employment decisions. . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects against discriminatory decisions, not wrong ones." *Harsine v. James*, 517 F. Supp. 2d 301, 308-09 (D.D.C. 2007).

Here, the decision to change the grade level of the night-shift position was made prior to the posting of the announcement and, therefore, prior to Mr. Hammond receiving any applications from candidates of any race or gender. After receiving applications, he made the decision to hire, from among candidates qualified for a PG-13/14 grade level position, an individual with night-shift experience who had been acting in the vacant position for three months. The evidence of discrimination here is, if anything, even less than was present in *Adeyemi*.

Ms. Colbert offers virtually no other evidence to support her argument that GPO's stated reasons for failing to hire her were a pretext for race and sex discrimination. Her strongest point appears to be that Mr. Hammond told the EEO investigator that one of his reasons for not selecting Ms. Colbert was that she "wandered" around the agency, but he later testified that he did not believe she wandered and had only made that comment out of anger. *See* Pl.'s Opp'n at 9;

Hammond Dep., 44.  However, to prove that an employer's stated reasons are a pretext for discrimination, a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). While it is troubling that Mr. Hammond admits to making a false statement to the EEO investigator regarding Ms. Colbert's alleged "wandering," that fact alone is insufficient on its own to support a conclusion of intentional discrimination. Ms. Colbert testified that neither Mr. Hammond nor Mr. Green ever made any discriminatory comments to her about her race or sex.  Def.'s Mem., Ex. 12 ("Colbert Dep.") at 35-36.  Her bald statement that "the Congressional office has a history of preferring, and giving advantages to, white employees," Pl.'s Opp'n at 17, is conclusory and unsupported by facts in the record, and therefore does not advance her claim. *See, e.g., Green*, 164 F.3d at 675 (finding that a plaintiff's unsupported claim that a less experienced candidate was hired in her stead was "so conclusory as to come within an exception to [the] rule" that statements made by the party opposing summary judgment should be taken as true).

### IV.  CONCLUSION

Ms. Colbert has failed to establish by a preponderance of the evidence that GPO's stated non-discriminatory reasons for her non-selection were a pretext for discrimination.  As there are no material facts in dispute, GPO's Motion for Summary Judgment [Dkt. # 20] will be granted. A memorializing Order accompanies this Memorandum Opinion.


Date: January 7, 2010                              /s/
                                    ROSEMARY M. COLLYER
                                    United States District Judge